THE FIRST NATIONAL BANK OF EAST LIVERPOOL, ADMINISTRATOR *v.* COLLAR ET AL.

[Cite as First Nat'l Bank of East Liverpool v. Collar (1971), 27 Ohio Misc. 88.]

(No. 65680-A—Decided March 22, 1971.)

Probate Division, Common Pleas Court of Columbiana County.

*Mr. Ben H. Berman,* for the estate.
*Messrs. Vodrey & Shay,* for defendant Collar et al.
*Mr. Charles Lang,* for the First National Bank of East Liverpool.
*Messrs. Krugliak, Williams, Griffiths & Dougherty,* for defendant Richard Manley et al.

TOBIN, J. This matter came on to be heard on the complaint to determine heirship filed by the administrator and

on the various responses and answers of the parties involved. The facts are as follows:

Paul Burbick and Dorothy Burbick, aka Dorothy Koenig, were married on September 3, 1949, and as issue of said marriage on June 2, 1950, was born Mary Lou Burbick, now known as Mary Lou Collar.

Paul Burbick was the sole child of the decedent, Alberta Burbick.

Mary Lou Burbick, aka Collar, was the sole blood child of Paul Burbick.

On April 10, 1957, in Case Number 42685 of the Court of Common Pleas, Columbiana County, Ohio, a divorce was granted to Dorothy Burbick, aka Koenig, and the custody of the child, Mary Lou, given to her.

On November 30, 1957 Dorothy Burbick married Henry L. Koenig.

On July 10, 1959, Paul W. Burbick committed suicide.

On May 3, 1960, in Case Number 1159, Mary Lou, the blood child of Paul Burbick, was adopted by her stepfather, Henry L. Koenig.

On December 22, 1969, her natural grandmother, Alberta Burbick, died and this is her estate.

The pertinent law on the matter of adoption and inheritance rights is found in R. C. 3107.13, passed in 1951, the quote reads:

"For all purposes under the laws of this state, including without limitations all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents, provided, 'for the purposes of inheritance to, through, and from a legally adopted child, such child shall be treated the same as if he were the natural child of his adopting parents and shall cease to be treated as the child of his natural parents for the purposes of intestate succession'."

In 1961, this statute was amended and read the same as above stated, but there was added to the last paragraph

above quoted, the following phraseology: "Except where one of the natural parents of such child has died and his living parent remarries, and such child is adopted by such stepfather or stepmother, in which case the right of inheritance from or through his natural parent or other natural kin shall not be affected by his adoption."

OPINION

It has been the more recent trend of the Ohio Legislature and Ohio law to place adopted children as nearly as possible in the same class and category as natural born children to adoptive parents and as nearly as possible to cut away the ties to the natural blood lines. In 1967, a change which became effective July 1, 1968, an exception to this tendency and to the Statute, was made by the last quoted exception. Thus, the Legislature has now created the following situation or classes of adopted children as far as inheritance is concerned:

1. Children who were adopted and where both natural parents are living, no longer can inherit through their natural blood lines.

2. A class where there has been an adoption by a step-parent and one of the natural parents is dead, in which the child could inherit to the blood line, but leaving to be answered a question of how far this exception is to be carried.

The literal statement of the statute would say that the three steps would have to occur in exactly this sequence:

A) One of the natural parents died.

B) The living parent remarried.

C) The child was then adopted by the stepfather or stepmother.

3. Another possibility would be where the parents were divorced. One parent remarried, the other parent died and then the child was adopted by the step-parent. (The facts of the within case.)

4. Still another possibility would be where the parents are divorced, the party having custody remarries, the child is adopted and then one of the parents dies. Query: Under which category can the child inherit through its natural

blood line consistent with the exception created by the 1968 version of R. C. 3107.13.

It has been stated time without end, and requires no particular citation by this court, that the courts in interpreting an act of the Legislature, must presume that the Legislature had something definite in mind in the passing of the Act and must, as nearly as possible, determine what that purpose could be.

In all adoptions, as illustrated in R. C. 3107.06, there must be either a consent by the living parents, adult or minor, unless the child is in the permanent custody of an agency, or the parent is adjudged incompetent where the court, after a reasonable investigation, may give said consent; or if it is alleged that one or both parents has wilfully failed to properly support and maintain for a period of more than two years; or if both parents are dead, or cannot be found with reasonable diligence, consent may be given by a next friend. Where the consent of the parent would not be required, notice of said proposed adoption, however, if possible, must still be given to him or her and a chance be given to that parent to oppose the adoption, if the parent so desires. The only time a parent would not be in a position to oppose an adoption, or at least have his day in Court, would be if that parent were dead at the time of the filing of the adoption and at the hearing, or, if he is absent and cannot be found, but that is caused by his or her own dereliction, in not keeping in touch with his own natural child. But where a parent is dead, the surviving parent need ask no one's consent except that of the child over twelve years of age, for an adoption to be valid. Grandparents or other blood relatives have no legal standing in court to oppose such adoption. Therefore, the court conceives that the sole purpose of the Legislature in creating this exception to its general rule that adopted children are cut off from the natural blood lines, to be where the natural parent was never given a chance to contest the adoption, through no fault of his or her own, because that parent was dead before the adoption proceedings were started and heard. Any other reasoning, and the reason-

ing urged by the brothers of the deceased woman to eliminate Mary Lou, would create a very narrow class, to-wit: only those children who had one parent die prior to the remarriage and prior to the adoption by a step-parent. There can be no logical reason given, so far as this Court can determine, why this child should be placed in a more favorable position than a child whose parent has remarried and then the other natural parent died and then there was an adoption.

Therefore, the court rules that the intention and the meaning of the Legislature was to place the adoptive child, whose parent had died before the adoption, whether he died before or after the marriage of the surviving parent, would be in a position to inherit through its natural blood lines, and would be within the exception expressed in the 1968 version of R. C. 3107.13.

While it is not necessary for this court to determine anything else, in passing and purely as obiter dicta, a child who has been adopted and then one of its natural parents dies, would still remain in the same class as a child whose parents are both living and who has had one of its natural blood line die and leave property. For the reason stated above, to-wit: That at the time of the adoption, the deceased parent either had a right, after notice, to fight and oppose the adoption, or, gave consent to the adoption, or through said parent's whereabouts being unknown, made it impossible to serve him other than by publication.

The court realizes that this is something new and quite possible other logical reasons can be brought forth for a contrary opinion. But this is the only decision that would make sense to this Court and give meaning and answer to the question of why the Legislature made this change in R. C. 3107.13 and created this exception class among adopted children.